IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT WILLIAMS, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF PHILADELPHIA, et. al., | : | No. 13-207 |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE                                                                                April 23, 2014

Defendants, the City of Philadelphia and Police Officer Andre Boyer, seek to exclude evidence pursuant to Federal Rules of Evidence 402 and 403 of Officer Boyer's alleged prior misconduct.[1] Plaintiff Robert Williams argues the evidence is relevant to demonstrate: (1) the City was deliberately indifferent to Boyer's repeated constitutional violations and that it failed to properly supervise him;[2] and (2) Boyer's absence of mistake, knowledge, plan to violate constitutional rights, and motive to fabricate a basis of probable cause.

I will grant, in part, Defendants' motion. The contested evidence is relevant to Williams' claims against the City, and much of it is offered for a proper purpose against Officer Boyer. See

---

[1] Defendants also moved to preclude evidence regarding alleged prior misconduct by Officer Michael Vargas, but have since agreed to dismiss Officer Vargas from the case.

[2] Williams' claims against the City are based on Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978), in which the Court held that a governmental body may be sued under 42 U.S.C. § 1983 for constitutional deprivations caused by a governmental custom, policy, or procedure. See also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (municipality can only be liable under § 1983 when the alleged constitutional transgression involves "a policy, regulation or decision officially adopted by a governing body or informally adopted by custom").

Fed. R. Evid. 404(b).  For some of it, however, the risk of unfair prejudice to Officer Boyer, its cumulative nature, or the risk of jury confusion substantially outweighs its probative value.  See Fed. R. Evid. 403.  I will give the jury a limiting instruction to eliminate any unfair prejudice.  See Fed. R. Evid. 105.

I.       Factual History[3]

Plaintiff Robert Williams, a.k.a. hip-hop artist "Meek Mill," alleges that Philadelphia Police Officers Boyer and Alvin Outlaw illegally stopped and detained him on October 31, 2012, causing him to miss an engagement in Atlanta that evening and leading to the loss of other business opportunities that caused him to lose money.  He has sued the officers individually, claiming that they falsely claimed to smell marijuana emanating from his vehicle, as well as the City for being deliberately indifferent to a pattern of constitutional violations by Officer Boyer.[4]

II.      Legal Standard

Evidence is admissible if it is relevant, i.e. if it tends to make the existence or non-existence of a disputed material fact more probable than it would be without that evidence.  See Fed. R. Evid. 401, 402.  Evidence of "other crimes, wrongs, or acts" is admissible only for certain purposes unrelated to showing that a person has a particular character trait and acted in accordance with that character trait on a particular occasion.  Fed. R. Evid. 404.  This includes evidence of both prior and subsequent bad acts.  See Ansel v. Green Acres Contracting Co., 647 F.3d 15, 520 (3d Cir. 2003) (admitting evidence of subsequent bad acts in a civil case).  Proper purposes for admitting such other bad acts evidence include motive, opportunity, intent,

---

[3]     The alleged facts are taken from Williams' Amended Complaint and the Pretrial Motions.

[4]     Williams' counsel has represented he has not yet received the Internal Affairs Division ("IAD") file regarding Officer Outlaw.  If he receives, and seeks to admit, this evidence later, I will provide rulings consistent with this opinion.

preparation, plan, knowledge, identity, and absence of mistake. Fed. R. Evid. 404(b)(2). The moving party, however, must establish a relevant purpose "without an inference that the party against whom it is admitted acted in conformity with whatever the evidence of the prior act says about his or her character." United States v. Smith, 725 F.3d 340, 345 (3d Cir. 2013); accord United States v. Sampson, 980 F.2d 883, 887 (3d Cir. 1992) (evidence's proponent "must clearly articulate how the evidence fits into a chain of logical inferences, no link of which can be the inference that because the [claimant engaged in certain improper activity] before, he is more likely to have [done so again]."). For example, in Smith, the Court reversed the admission of Rule 404(b) evidence because the prior acts evidence required the jury to impermissibly infer that the defendant had a particular character trait when he committed the prior misconduct and had acted in conformity with that character trait in committing the crime at issue. Smith, 725 F.3d at 345-46.

Rule 404(b) is a rule of inclusion, not exclusion. United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003) ("We favor the admission of evidence of other criminal conduct if such evidence is 'relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.'") (quoting United States v. Long, 574 F.2d 761, 765 (3d Cir. 1978)); United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988). I may nonetheless exclude relevant 404(b) evidence if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

To be admissible, "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect

under Rule 403; and (4) the court must charge the jury to consider the evidence only for the purpose for which it was admitted." Sampson, 980 F.2d at 886 (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

III.    Discussion

The City concedes that documents and information related to Internal Affairs Division ("IAD") investigation 08-1076 are relevant to Williams' claims against the City. Defs.' Mem. of Law (doc. 31) at 6-7. This investigation found Officer Boyer "continuously and repeatedly placed inaccurate information on official documents in the process of completing marijuana arrests" between 2006 and 2008, and resulted in his discipline. Pl.'s Proposed Trial Ex., Tab. 19 at 6; see also id. at 3; Defs.' Memo. of Law at 7. Because this investigation shows that the City knew about Officer Boyer's misconduct in connection with numerous marijuana arrests over two years, it is probative of Williams' claims that the City failed to properly discipline and supervise Officer Boyer. See Beck, 89 F.3d at 969-70, 973 (other complaints against police officer were relevant to plaintiff's claim that the City had a "custom of acquiescing in the excessive use of force by its police officers"); Fletcher v. O'Donnell, 867 F.2d 791, 793 (3d Cir. 1989) (Monell liability hinges on establishing a "pattern of constitutional violations.").

IAD investigation 08-1076 also is relevant to Williams' claim that Officer Boyer fabricated claims of smelling marijuana to justify a search of Williams' vehicle. Such evidence demonstrates a specific pattern of behavior that could be considered a "plan" and, therefore, absence of mistake on the part of Officer Boyer. Fed. R. Evid. 404(b). Moreover, because the probative value of this evidence is not substantially outweighed by its potential to unfairly

prejudice and confuse the jury, see Fed. R. Evid. 403, evidence of the IAD investigation may be admitted.[5]

The following complaints also are relevant to Williams' Monell claim against the City and his claims against Officer Boyer because they show a pattern of similar constitutional violations involving complaints about searches.[6] This evidence supports an inference that Officer Boyer has attempted to justify warrantless searches based on meritless or disputed suspicions of criminal activity. The evidence does not implicate Officer Boyer's propensity to violate the law; rather, it establishes his plan or modus operandi for justifying his actions. Evidence related to the prior complaints against Officer Boyer make it more likely that his actions in this case were taken in conformity with a plan and not isolated mistakes or accidents. Moreover, the probative value of these complaints is not substantially outweighed by their potential to unfairly prejudice and confuse the jury. See Fed. R. Evid. 403. Any risk of unfair prejudice also can be minimized by appropriate limiting instructions. See Fed. R. Evid. 105, 403. The following evidence is admissible against the City and Officer Boyer:

- IAD No. 06-0150 (a March 9, 2006 complaint alleging a car stop made without any legal basis in which all males in the vehicle were searched and no contraband was found);

---

[5] Evidence regarding IAD No. 08-1076 is admissible both because it has a non-propensity, admissible purpose under 404(b) and, potentially, for impeachment purposes under Rule 608. Evidence regarding IAD No. 11-582, which found that Officer Boyer lied with regard to a material fact during a police investigation, is admissible for impeachment purposes only. Evidence of the proceedings in Exhibits P-36 and P-37 (transcripts documenting adverse findings regarding Officer Boyer's credibility), are also admissible for impeachment purposes only.

[6] Some of these complaints also may be admissible because they were included within IAD No. 08-1076.

5

- IAD No. 07-0322 (a June 22, 2007 complaint alleging Officer Boyer approached a group of people, used inappropriate language, and searched them, claiming he smelled marijuana, and no contraband was found);

- IAD No. 08-0379 (an April 10, 2008 complaint alleging that Officer Boyer stopped a group of people with no legal basis and searched them, finding only one illegal pill);

- IAD No. 10-0068 (a March 1, 2010 complaint alleging Officer Boyer stopped a person and claimed to smell PCP, although no illegal drugs were found);

- IAD No. 10-0242 (a June 11, 2010 complaint alleging Officer Boyer stopped a driver with no legal basis, searched the car, and found no contraband);

- IAD No. 11-0245 (a May 3, 2011 complaint alleging Officer Boyer stopped and searched a person, claiming he had received a report of males smoking marijuana, and no contraband was found).

- IAD No. 11-0710 (two December 2011 complaints alleging Officer Boyer stopped a driver and searched his vehicle without legal basis);

- IAD No. 12-0637 (a November 9, 2012 complaint alleging Officer Boyer stopped a driver and then arrested and searched him for throwing a traffic ticket to the ground);

Evidence of the remaining investigations are inadmissible. Although potentially relevant to the Monell claim against the City, they can serve no purpose other than as inadmissible propensity evidence of Boyer's questionable police practices under Rule 404(a). Even if Williams can articulate a proper theory of relevance under Rule 404(b), the evidence's probative value is substantially outweighed by a danger of unfairly prejudicing the jury. For example, some complaints involve Officer Boyer's use of force and verbal abuse, which is unrelated to his actions here and could only inflame the jury. Moreover, admitting all of the numerous incidents

related to Officer Boyer, as sought by Williams, would be excessive and cumulative.[7] See Fed. R. Evid. 403. Records and testimony regarding the following investigations are inadmissible:

- IAD No. 06-0326 (a June 26, 2006 complaint against Officer Boyer alleging that he verbally abused someone while threatening to arrest her);

- IAD No. 07-0241 (a May 21, 2007 complaint alleging Officer Boyer, off-duty, threatened to lock up someone over a child custody matter involving a personal friend);

- IAD No. 10-0264 (a June 9, 2010 complaint alleging Officer Boyer arrested someone for carrying a firearm even though he had produced a valid license to carry);

- IAD No. 10-0638 (an October 25, 2010 complaint alleging Officer Boyer stopped a driver, claimed she parked her car too close to the curb and began making false accusations against her);

- IAD No. 11-0506 (a September 7, 2011 complaint alleging Officers Boyer and Outlaw stopped a driver, forced him to consent to the search of his vehicle, and searched his vehicle without permission, finding no contraband);

---

[7] Williams' counsel further maintains that all of the proposed evidence should be admitted, despite its cumulative nature, to demonstrate the "reprehensibility" required to obtain punitive damages. See Philip Morris USA v. Williams, 549 U.S. 346 (2007). Philip Morris involved a punitive damages claim that the Court found had been based on the jury's desire to punish the defendant tobacco company for harm to the named plaintiff as well as other similarly-situated individuals who had been misled and harmed. Id. at 353. The Court did not hold that the cumulative nature of evidence is irrelevant when a plaintiff seeks to establish reprehensibility. Rather, the Court reasoned that although "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible," it is also "particularly important [to] avoid procedure that unnecessarily deprives juries of proper legal guidance." Id. at 354. Allowing Williams to introduce all of the evidence he seeks to admit, without regard to its cumulative nature, would undermine the Court's mandate that trial courts "provide assurance that juries are not asking the wrong question, i.e., seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers." Id. at 355.

- IAD No. 11-0648 (a November 4, 2011 complaint alleging Officer Boyer stopped a pedestrian without legal basis, harassed him, threw him against a patrol car, and searched him without finding contraband);

- IAD No. 13-0515 (a October 23, 2010 complaint alleging Officer Boyer stopped a driver, searched his vehicle without permission, and confiscated $6,400).

- IAD No. 13-0077 (a February 2, 2013 complaint alleging Officer Boyer stopped a driver for a traffic violation, tried to coerce him into consenting to a search of the vehicle, searched the vehicle, and found nothing, then searched the driver's person and found a marijuana blunt, at which time he arrested the driver and Officer Boyer and his partner punched and kicked the driver and took money from him which was never receipted or returned).

The following exhibits, included in Plaintiff's Trial Binder, are excluded for identical reasons:

- Philadelphia Police Department Internal Affairs Officer PBI History for Police Officer Andre Boyer (P-16);

- Concise Officer History of Police Officer Andre Boyer (P-17);

- Notice of Suspension dated March 5, 2008 regarding Andre Boyer (P-18);

- Employee Assessment of Action Taken dated February 6, 2013 re: Police Officer Andre Boyer (P-30);

- Civil Action Complaint in the case of <u>Andre Boyer v. City of Philadelphia, et al.</u>, dated May 23, 2012 (P-38);

- Civil Action Complaint in the case of <u>Andre Boyer v. City of Philadelphia</u>, dated November 7, 2013 (P-39);

- Answer to Complaint in the case of Andre Boyer v. City of Philadelphia, dated September 12, 2012 (P-40).

Finally, Defendants dispute the admissibility of several of Plaintiff's proposed witness' testimony. The first, Officer Renae Jeffcoat, is offered as a liability witness to testify about the unlawful nature of the detention of Williams in the jail cell at the 22nd Police District. Pl. Trial Mem. (doc. 25) at 9. Officer Jeffcoat's proffered testimony, however, would feature speculation on Officer Boyer's reputation as a rogue police officer, see Fed. R. Evid. 601, and is inadmissible character evidence. See Fed. R. Evid. 404(a).

The second and third witnesses, Conah Howard and Philip Smith, are Williams' business managers. Pl. Trial Mem. at 8. They are listed as liability and damages witnesses, and are expected to testify as to the financial losses Williams sustained as a result of the incident. Id. These witnesses are similarly limited to testimony based on their personal knowledge. See Fed. R. Evid. 601. With respect to Williams' allegedly reduced corporate endorsement contract,[8] they may not speculate about the motivation of the other contracting party, or repeat hearsay from corporate officials on their business reasons for modifying Williams' endorsement contract. They are free to testify, however, as to the specific offers made both before and after the incident, and counsel can argue appropriate inferences from such evidence. Id.

An appropriate Order follows.

BY THE COURT:

/s/ Timothy R. Rice
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[8] Williams seeks to prove that, before the incident, negotiations reflected potential compensation in the range of $1.7 - $2 million, but after the incident it was reduced to $650,000.